[No. 13543-4-II.   Division Two.   July 22, 1992.]

ROGER EDWARDS, ET AL, *Appellants*, v. THE DEPARTMENT OF TRANSPORTATION, ET AL, *Respondents*.

---

554

*Richard D. Eadie,* for appellants.

*Kenneth O. Eikenberry, Attorney General,* and *Richard A. Heath, Senior Assistant,* and *Spencer W. Daniels, Assistant,* for respondents.

ALEXANDER, J. — Roger Edwards, a Department of Transportation engineer, appeals a determination by the Thurston County Superior Court that disciplinary action taken by the Department did not violate his right to free expression. He also appeals that court's failure to award him more than nominal damages for what it found was the Department's violation of his due process rights. The Department cross-appeals, claiming that the trial court erred in rejecting the claim of qualified immunity of one of the defendants, Robert Dugan, and in determining that Edwards was entitled to a hearing before his salary was reduced. We reverse the trial court's ruling on the free expression issue and remand for a determination of damages. We affirm the trial court in all other respects.

At all times material to this case, Edwards was employed by the Washington State Department of Transportation at its Tacoma highway construction office. In the course of his duties as a researcher and draftsman of documents, Edwards came across a letter to the Department from a

company that had previously worked with the Department on a "dewatering" project. The author of the letter was highly critical of the Department's cost effectiveness and efficiency and of its district construction engineer, Robert Dugan.

Edwards, who was a resident and property owner in the Salmon Beach area of Pierce County, sent a copy of the letter to Robert Sparling, the sewage and utilities manager for the City of Tacoma. The copy was accompanied by a note from Edwards, which read as follows:

> I am sharing the attached letter with you *confidentially*. It expressed with rare eloquence the real frustration of dealing with a public works agency. I have the sickening *gut feeling* that the Salmon Beach sewer project is WIDE OPEN to similar claims due to vague and unimaginative plans.

> I don't expect your *written* comment and/or concurrence. But I would like to talk privately with you.
> Roger Edwards, PE.
> work phone: 593-2051

Edwards indicated that he sent a copy of the letter to Sparling because he had learned that Sparling was one of the principal engineers involved in a sewer project proposed for the Salmon Beach area. Although the Department of Transportation was not involved in the Salmon Beach project, Edwards said he was attempting to underscore his concerns about what he believed was the potential for similar problems with the Salmon Beach project.

Upon receipt of the letter, Tacoma officials notified the Department of Transportation that Edwards had sent the material to them. They also sent a copy of Edwards' note and the accompanying letter to Edwards' superiors at the Department. Dugan eventually came into possession of the materials. He decided to take disciplinary action against Edwards, concluding that Edwards' conduct was an embarrassment to the Department and that it potentially damaged the Department's working relationship with the City of Tacoma. Dugan also felt that Edwards' actions constituted a conflict of interest and involved unauthorized use of department records.

Dugan sent a letter to Edwards informing him that his salary would be reduced for a period of 5 months from $2,337 per month to $2,225 per month. Dugan did not discuss his action with Edwards before sending him the letter notifying him of the salary reduction, nor did he allow Edwards to explain his actions.

Edwards appealed the Department's action to the Personnel Appeals Board. Edwards asserted before the Board that his conduct in sending the letter was the free exercise of "speech" and was, therefore, protected by the first amendment to the United States Constitution and article 1, section 5 of the Washington Constitution. The Board refused to consider that issue. It did, however, conclude that Edwards' conduct constituted a wanton and willful disregard of the Department's interests. It also held that the Department had not violated Edwards' due process rights by failing to afford him a predisciplinary hearing. Finally, it concluded that the Department had failed to prove by a preponderance of the evidence that Edwards had willfully violated the merit rules against conflict of interest.[1]

Edwards appealed the Board's determination to the Thurston County Superior Court. He also asserted a claim in that court under 42 U.S.C. § 1983, contending that the Department's action violated his free speech and due process rights. The Superior Court determined that there had been no "free speech" violation, but that the Board had erred when it ruled that Edwards' due process rights were not violated. It concluded, however, that the Board's error was harmless, in that the action taken by the Department would have been the same had the Department held a predisciplinary hearing. It, therefore, awarded Edwards only nominal damages of $1 and attorney's fees and costs relating to the due process claim in the amount of $309.95.[2]

---

[1]The Department has not appealed that determination.

[2]Under 42 U.S.C. § 1988, pursuant to actions taken under § 1983, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988.

Edwards contends on appeal to this court that the Superior Court erred in ruling that the disciplinary action did not violate his constitutional right to speak out on matters of public interest and in determining that the Department's failure to give him a predisciplinary hearing was harmless error.

## I
### FREE SPEECH/EXPRESSION

■ The Board, as we have noted, failed to address Edwards' contention that his constitutional right to free expression was violated. On review of an administrative action, the appellate court is generally required to review the record of the agency and not the record of the superior court. *Franklin Cy. Sheriff's Office v. Sellers*, 97 Wn.2d 317, 324, 646 P.2d 113 (1982), *cert. denied*, 459 U.S. 1106, 74 L. Ed. 2d 954, 103 S. Ct. 730 (1983). Consequently, an argument can be made that it was necessary for the Board to deal with the free speech issue before an appeal could be taken. In our judgment, however, any procedural error was rendered moot because the Superior Court's original jurisdiction to entertain the matter was invoked by Edwards' pleading entitled a "notice of appeal . . . and complaint for damages." *See Ronken v. Board of Cy. Comm'rs*, 89 Wn.2d 304, 310, 572 P.2d 1 (1977). As a result, this court has jurisdiction to review the Superior Court's ruling on Edwards' free speech claim.

■ Whether speech is constitutionally protected is a question of law. *Connick v. Myers*, 461 U.S. 138, 148 n.7, 75 L. Ed. 2d 708, 103 S. Ct. 1684 (1983); *Dicomes v. State*, 113 Wn.2d 612, 624, 782 P.2d 1002 (1989). "It is well settled that the government cannot compel persons to relinquish their First Amendment right to comment on matters of public interest as a condition of public employment." *Perry v. Sindermann*, 408 U.S. 593, 33 L. Ed. 2d 570, 92 S. Ct. 2694 (1972); *Pickering v. Board of Educ.*, 391 U.S. 563, 568, 20 L. Ed. 2d 811, 88 S. Ct. 1731 (1968); *Binkley v. Tacoma*, 114 Wn.2d 373, 381, 787 P.2d 1366 (1990). Consequently, the First Amendment protects the right of public employees

"to comment on matters of public interest" in connection with the operation of the government agencies for which they work. *Pickering*, 391 U.S. at 568.[3]

The *Pickering* Court also observed, however, that the government, on occasion, may have a legitimate interest in regulating the speech of its employees. *Pickering*, 391 U.S. at 568. In *Binkley v. Tacoma, supra*, our Supreme Court set forth a 4-step inquiry that must be employed to determine if a public employer has violated a public employee's right to free speech:

> First, the public employee must establish that his speech dealt with a matter of public concern. Second, if the speech dealt with a matter of public concern, the public employee must prove that his interest in "commenting upon matters of public concern" is greater than the employer's interest in "promoting the efficiency of the public services it performs". Third, the public employee must demonstrate that his speech was a substantial or motivating factor in the adverse employment decision of which he complains. Finally, if the public employee is able to prove these three elements, the burden shifts to the employer to prove that it would have reached the same decision even in the absence of the employee's protected conduct.

(Citations omitted.) *Binkley*, 114 Wn.2d at 382, and cases cited.

Because of the enormous variety of fact situations that could arise when a public employee is disciplined by his or her employer for what the employee believes is the exercise of his or her free speech rights, it is neither appropriate nor

---

[3]State courts are free to interpret their state constitution to afford more protection to an individual than is provided by the counterpart provision in the United States Constitution, if a different interpretation is necessary to protect the fundamental rights of Washington citizens. *Alderwood Assocs. v. Washington Envtl. Coun.*, 96 Wn.2d 230, 238, 635 P.2d 108 (1981). The protections provided to citizens by the first amendment to the United States Constitution for speech on matters of public concern, however, have been held to occupy the " ' "highest rung of the hierarchy of First Amendment values," ' " and, therefore, such speech is already afforded special protection. *Connick*, 461 U.S. at 145. It would seem, therefore, the balancing test used in *Binkley v. Tacoma, supra*, which is taken from federal First Amendment analysis, adequately protects a Washington State public employee's right to comment on matters of public interest.

feasible to lay down a general standard against which all statements must be judged. *Pickering*, 391 U.S. at 569. Instead, courts must carefully balance the interests presented. *Connick*, 461 U.S. at 154. "The inquiry into the protected status of speech is one of law, not fact." *Connick*, 461 U.S. 147-48 & n.7. Steps one and two of the 4-step inquiry are, therefore, reviewed de novo as a matter of law. *Rankin v. McPherson*, 483 U.S. 378, 386 n.9, 97 L. Ed. 2d 315, 107 S. Ct. 2891 (1987). The latter two steps, however, are questions of fact ordinarily left to the trier of fact. *Binkley*, 114 Wn.2d at 382. When reviewing fundamental constitutional principles, however, the appellate court must make its own independent examination of the record, but will give considerable weight to the superior court's findings of fact. *State v. Mak*, 105 Wn.2d 692, 712, 718 P.2d 407, *cert. denied*, 479 U.S. 995 (1986); *McNear v. Rhay*, 65 Wn.2d 530, 535, 398 P.2d 732 (1965).

A. Public Concern.

■ ■ Although the trial court entered a finding that Edwards' actions were a matter of personal, not public, interest, that finding is properly labeled a conclusion of law. *See Para-Medical Leasing, Inc. v. Hangen*, 48 Wn. App. 389, 397, 739 P.2d 717, *review denied*, 109 Wn.2d 1003 (1987). In order to distinguish between speech involving matters of public versus private interest, this court must determine the intent behind the employee's speech and then determine whether the employee meant to raise an issue of public concern, or merely intended to further a personal interest. *Hayes v. Chicago*, 710 F. Supp. 239, 242 (N.D. Ill. 1989). In other words the court must ask the following question: Was the employee acting as an aggrieved employee, attempting to rectify problems in the employee's working environment, or was he or she acting as a concerned citizen bringing a wrong to light? *Binkley*, 114 Wn.2d at 385. The key factor in determining if speech is of public concern is to eliminate from the speech matters of personal interest such as "pay, hours, or conditions of employment." *Dicomes*, 113 Wn.2d at 625. The court must then decide if the employee's expres-

sion can still fairly be considered "as relating to any matter of political, social, or other concern to the community". *Connick*, 461 U.S. at 146.

The United States Supreme Court has interpreted the phrase "public concern" liberally. In *Connick*, an assistant district attorney was told that she was being transferred to a different section of criminal court, a decision she strongly opposed. Despite her objections, her employer, the district attorney, intended to follow through with the transfer. The employee then prepared and distributed a questionnaire to her fellow staff members soliciting their views on the office transfer policy and other office matters. The court held that one question out of the 14-question survey, having to do with pressure to work in political campaigns on behalf of office-supported candidates, involved a matter of public concern and satisfied the public concern test. *Connick*, 461 U.S. at 147-49; *Binkley*, 114 Wn.2d at 383 n.8. In *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 50 L. Ed. 2d 471, 97 S. Ct. 568 (1977), the Court held that the free speech rights of an untenured teacher had been violated when the teacher was discharged for conveying to a radio station information regarding teacher dress and appearance contained in a memorandum that the school principal had circulated to various teachers. *Mt. Healthy*, 429 U.S. at 284.

Similarly here, Edwards was not airing grievances about his employment or the work environment at the Department of Transportation. Rather, he was expressing concern about the efficiency and cost effectiveness of public works agencies in general and how problems with such agencies might affect a proposed sewer project that involved his residence and the property of other residents in the Salmon Beach community.[4] The speech for which Edwards was disciplined was of concern to at least a portion of the commu-

---

[4]The Department attempts to label this as speech on a matter of purely private interest by pointing out that the Salmon Beach sewer project affects Edwards personally. However, the mere fact that speech regarding a matter of public interest is also of personal interest to the individual speaking out does not render the speech unprotected. *See Connick v. Myers, supra; Mt. Healthy City Sch. Dist. Bd. of Educ.; Binkley v. Tacoma, supra.*

nity at large and, therefore, by definition was "a matter of public concern."

B. Employee's Right To Speak Is Greater Than Employer's Interest in Efficiency.

In this case, the justifications the Department gave for the discipline are insufficient to outweigh Edwards' right to comment on the effectiveness and cost efficiency of the agency for which he works. The degree of importance of the employee's speech is determined by how much of the speech involved matters of a purely personal nature and how much was truly of public concern. *See Connick*, 461 U.S. at 149-50. Only when the matters of public concern are over-shadowed by personal interest will the speech be considered outside the protection of the First Amendment. *Binkley*, 114 Wn.2d at 384. Here, as we noted above, the letter spoke almost entirely about a matter of public concern.

■ Employer interests that justify sanctioning a public employee for exercising his right to free speech include: maintaining efficient management of personnel, *Connick*, 461 U.S. at 151; maintaining close internal working relations, *Rankin v. McPherson*, 483 U.S. 378, 388, 97 L. Ed. 2d 315, 107 S. Ct. 2891 (1987); maintaining political loyalty and the confidentiality of information known to employees who are "vested with discretionary authority and policy-making responsibilities", *Dicomes*, 113 Wn.2d at 627; and avoiding interference with work, personnel relationships, or disruptions in the public employer function. *Rankin*, 483 U.S. at 388. In sum, if the employee's actions threaten the employer's interests in maintaining an efficient operation and in avoiding disruptions in the workplace, the employee's right to free speech may be outweighed. *Binkley*, 114 Wn.2d at 387.

■ This case did not involve a situation where Edwards' conduct bordered on insubordination or disruption of the workplace. The record contains no indication that the act of sending the letter interfered with Edwards' job performance or the performance of the Department. *See Dicomes*, 113 Wn.2d at 625. Furthermore, Dugan conceded at trial that

Edwards did not have any policy-making authority, was not a political appointee, and was not a spokesman for the Department. Consequently, few of the justifications for tipping the scales in favor of the Department exist here. Moreover, the Department fails to show that the letter in any way interfered with its relations with the City. The Department claims that it needs only to show the potential for interference. We disagree. In order for the employer's interests to outweigh an employee's fundamental right to free speech on a matter of public concern, the Department must show more than that the speech is critical in nature and is potentially embarrassing. *Pickering*, 391 U.S. at 569-70.

C. Speech Was a Motivating Factor.

In step three, the employee is required to establish that the speech was a substantial or motivating factor in the adverse employment decision. *Binkley*, 114 Wn.2d at 382. The trial court found that Edwards was not disciplined for speech, but rather for taking and using Department of Transportation records for his personal use and for submitting those materials against the employer's interest to the City of Tacoma. The record, however, does not support this finding.

At the hearings before both the Board and the Superior Court, Dugan admitted that a motivating factor for the disciplinary action was that the letters contained information embarrassing to the Department. The Department conceded here that it is probable that no disciplinary action would have been taken had the letter not been sent to the City, thereby causing potential embarrassment and potential strain on the working relationship between the Department and the City. The Department's claim that the discipline was imposed solely for Edwards' conduct of photocopying and sending the letter therefore fails. Edwards was disciplined, at least in part, for the dissemination of the contents of the letter. Therefore, his speech was a motivating factor in the adverse employment decision.

### D. Employer's Decision Absent Protected Conduct.

In step four, the burden of proving that the disciplinary action would have occurred without the speech shifts to the employer. *Binkley,* 114 Wn.2d at 382. Both the Board and the Superior Court found that the Department did not discipline Edwards for his comments on the sewer project, but rather for his taking and using Department material.

As noted above, Dugan admitted at both hearings that the content of the letters was a motivating factor for sanctioning Edwards. Furthermore, the Department fails to demonstrate that taking and photocopying a nonconfidential letter would result in any disciplinary action. Dugan testified only that it is uncommon to do anything other than leave those documents within the Department. The Department has, therefore, failed to demonstrate that the same disciplinary decision would have been reached in the absence of the protected conduct of "speaking" about the efficiency and cost effectiveness of public works agencies.

### E. Conclusion.

We conclude that under the 4-part inquiry set forth in *Binkley v. Tacoma, supra,* the trial court erred in determining that the Department's action did not violate Edwards' free speech rights.

## II
### CROSS APPEAL

### A. Due Process.

Because we hold that the Department violated Edwards' free speech rights when it imposed any discipline upon him, we need not address the issues regarding the process Edwards was accorded in imposing that discipline.

### B. Qualified Immunity.

In its cross appeal, the Department claims that the Superior Court erred in rejecting Dugan's defense of qualified immunity.[5] The Department's argument focuses on the

---

[5]The Superior Court did grant the motion for summary judgment on the grounds of qualified immunity insofar as that motion involved dismissing Edwards' 42 U.S.C. § 1983 claims against the State and the Secretary of Transportation.

fact that, assuming arguendo a due process violation occurred, the law relating to predisciplinary hearings was not clearly established at the time Dugan took the actions causing the violation. This argument is moot, given our ruling that the action violated Edwards' free speech rights, rendering the due process claim moot. We will, however, analyze Dugan's defense of qualified immunity to determine if he should have been shielded from liability for violating Edwards' free speech rights.

"[G]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982) and cases cited. When an official moves for summary judgment by asserting as a complete defense that he or she is qualifiedly immune, the court must determine if the law at the time of the action was clearly established. If it was not, the official could not "fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Harlow v. Fitzgerald, supra* at 818. On the other hand, if the law was clearly established and the conduct of the official is violative of an individual's statutory or constitutional rights the immunity defense should fail. *Harlow v. Fitzgerald*, 457 U.S. at 819. To determine if the official knew or should have known of the relevant legal standard, the courts must look at the objective legal reasonableness of an official's acts. *Harlow v. Fitzgerald, supra*.

In 1968, the United States Supreme Court stated that the right of public employees to comment on matters of public interest was a clearly established First Amendment right. *Pickering*, 391 U.S. at 568. The courts had also clearly established the scope of a public employee's free speech rights at the time Dugan disciplined Edwards for exercising those rights. *See Connick v. Myers, supra*; *Meyer v. UW*, 105 Wn.2d 847, 850-51, 719 P.2d 98 (1986). Dugan is not protected by qualified immunity.

566

## III

### Conclusion

The Superior Court erred in concluding that Edwards'
actions were not constitutionally protected free speech.
Because the speech was protected, it should not have resulted
in any disciplinary action, including a reduction in salary.
Because the speech was protected, and no discipline should
have occurred, the due process arguments need not be
addressed. Dugan does not have qualified immunity for his
actions in violating Edwards' free speech rights. The Superior
Court is reversed and the case is remanded for a determina-
tion of damages caused by the violation of Edwards' free
speech rights and for assessment of attorney's fees.

MORGAN, A.C.J., and PEARSON, J. Pro Tem., concur.