[No. 34171-9-II. Division Two. October 3, 2006.]

KEVIN SKELLY, *Respondent*, v. THE CRIMINAL JUSTICE TRAINING COMMISSION, *Appellant*.

*Robert M. McKenna, Attorney General,* and *Elizabeth D. Brown, Assistant,* for appellant.

*Alexander W. Gambrel* (of *Gambrel Law Offices, P.L.L.C.*), for respondent.

¶1 Armstrong, J. — The Criminal Justice Training Commission (Commission) terminated Kevin Skelly, one of its managers. After the Personnel Appeals Board (Board) affirmed the termination, Skelly appealed to the superior court, which reversed and ordered Skelly reinstated. The Commission appeals, arguing that the trial court applied an incorrect legal standard in reviewing the Board's decision. We agree, and because there is no evidence the Board acted arbitrarily and capriciously, we reverse.

## FACTS

¶2 Michael Parsons, the Commission's executive director and appointing authority, hired Kevin Skelly as a human resource manager. As human resource manager, Skelly was responsible for the Commission's human resource activities, including personnel, administrative policies, and training employees. Parsons knew that Skelly had not worked as a state employee before, but Skelly agreed to attain a good working knowledge of the state's personnel practices and the Commission's policies and procedures.

¶3 A job performance evaluation showed that Skelly performed satisfactorily during his first year. Shortly after that evaluation, however, Parsons issued Skelly a letter of reprimand for his inappropriate comments regarding an employee's Department of Labor and Industries claim form. Parsons

cautioned Skelly that similar behavior in the future would result in disciplinary action. Within a month of issuing the reprimand, Parsons received several complaints about Skelly. Parsons believed that the allegations warranted an investigation.

¶4 The investigation results convinced Parsons that Skelly had neglected his duty and abused his authority as human resource manager. Parsons found that Skelly had impeded the staff's performance and had created a negative, hostile, and adversarial work environment for his subordinates and co-workers. Parsons determined that Skelly also willfully violated published Commission and Department of Personnel rules and regulations. He found Skelly insubordinate in contacting a potential witness to the investigation despite Parsons's directive that he refrain from speaking with potential witnesses. Finally, Parsons determined that Skelly was not a positive role model and that he failed to understand how his behavior was inappropriate. After considering Skelly's performance and the investigation results, Parsons terminated Skelly.

¶5 Skelly appealed to the Board. The Board heard Skelly's appeal and issued findings of fact, conclusions of law, and an order upholding Skelly's dismissal. The Board concluded that Skelly inappropriately and unprofessionally dealt with Commission personnel. The Board also found that Skelly had violated Commission and Department of Personnel policies and procedures and that he had willfully disobeyed Parsons's directive to refrain from contacting any potential witness to the agency's investigation. The Board concluded that Parsons was justified in terminating Skelly.

¶6 Skelly appealed to the Thurston County Superior Court, which ruled that there were no "extreme circumstances to require . . . termination." Clerk's Papers (CP) at 80. The trial court explained that the Commission should have counseled Skelly about his problems and given him "another opportunity to correct those [problems]." CP at 80. Accordingly, the trial court reversed the Board's decision,

reinstated Skelly to Commission human resource manager, and ordered him to serve a 15-day suspension.

## ANALYSIS

### I. STANDARD OF REVIEW

■ ¶7 We review a Board decision de novo on the record made at the Board level. *Dedman v. Pers. Appeals Bd.*, 98 Wn. App. 471, 476, 989 P.2d 1214 (1999) (citing *Adams v. Dep't of Soc. & Health Servs.*, 38 Wn. App. 13, 14, 683 P.2d 1133 (1984)); *Nelson v. Dep't of Corr.*, 63 Wn. App. 113, 115, 816 P.2d 768 (1991) (citing former RCW 41.64.130 (1981)). We will uphold a Board factual finding if substantial evidence supports it. *Ballinger v. Dep't of Soc. & Health Servs.*, 104 Wn.2d 323, 328, 705 P.2d 249 (1985) (citing *Gogerty v. Dep't of Insts.*, 71 Wn.2d 1, 8-9, 426 P.2d 476 (1967)). We treat unchallenged administrative factual findings as verities on appeal. *Lawter v. Employment Sec. Dep't*, 73 Wn. App. 327, 332-33, 869 P.2d 102 (1994) (citing *Ass'n of Capitol Powerhouse Eng'rs v. State*, 89 Wn.2d 177, 183, 570 P.2d 1042 (1977)).

■ ■ ¶8 We review asserted errors of law de novo, giving substantial weight to the Commission's view of the law. *Dedman*, 98 Wn. App. at 477 (quoting *Sullivan v. Dep't of Transp.*, 71 Wn. App. 317, 321, 858 P.2d 283 (1993)). In reviewing mixed questions of fact and law, we determine the applicable law independently from the agency's decision and apply the law to the agency's factual findings. *Franklin County Sheriff's Office v. Sellers*, 97 Wn.2d 317, 330, 646 P.2d 113 (1982).

### II. SKELLY'S PERSONNEL APPEALS BOARD APPEAL

¶9 The Board denied Skelly's appeal, ruling that "[w]hen viewing the totality of the proven charges, especially [Skelly's] ineffective and substandard performance as the agency's top Human Resource professional, termination was not too severe." Administrative R. (AR) at 16. Employees

may appeal Board decisions that are: (1) founded on an error of law, (2) contrary to a preponderance of the evidence,[1] (3) materially affected by unlawful procedure, (4) based upon a constitutional violation, or (5) arbitrary and capricious. Former RCW 41.64.130(1)(a)-(e) (1981); *Dedman*, 98 Wn. App. at 476.

¶10 Skelly does not assign error to any of the Board's factual findings. Accordingly, we treat those findings as verities. *Lawter*, 73 Wn. App. at 332-33 (citing *Ass'n of Capitol Powerhouse Eng'rs*, 89 Wn.2d at 183). Skelly argues that the trial court correctly reversed the Board's ruling because the Board based its ruling on an error of law and also acted arbitrarily and capriciously. *See* former RCW 41.64.130(1)(a), (e).

1. Error of Law

 ¶11 Skelly argues that the Board ignored RCW 41.06.176 in reaching its decision.

¶12 RCW 41.06.176 reads: "**Employee performance evaluations—Written notification of deficiencies.** Each employee whose work is judged unsatisfactory shall be notified in writing of the areas in which the work is considered deficient. Unless the deficiency is extreme, the employee shall be given an opportunity to demonstrate improvement." According to its title, the statute concerns employee performance evaluations. And RCW 41.06.169 requires the director of personnel to develop standardized performance evaluations for agencies to use in appraising employee job performance. That statute requires that performance evaluation procedures put "primary emphasis on recording how well the employee has contributed to efficiency, effectiveness, and economy in fulfilling state agency and job objectives." RCW 41.06.169. Former WAC 356-30-300 (1991), *repealed* 2005, adopted under RCW 41.06.169's

---

[1] Our Supreme Court has held that although former RCW 41.64.130(1)(b) (1981) uses the term "preponderance," we must determine whether substantial evidence supports the Board's decision. *Ballinger*, 104 Wn.2d at 328.

statutory authority, provides procedures and requirements for evaluating an agency employee's performance.

¶13 On the other hand, former RCW 41.06.500(2)(c) (2002) authorizes the director of personnel to adopt a performance appraisal system for managers[2] that "emphasizes individual accountability for program results and efficient management of resources; effective planning, organization, and communication skills; valuing and managing workplace diversity; development of leadership and interpersonal abilities; and employee development." Former RCW 41.06.500(1) expressly authorizes the director of personnel to adopt separate rules for managers, "notwithstanding any other provisions of [chapter 41.06 RCW]."[3] Former WAC 356-56-440 (1994), *repealed* 2005, adopted under RCW 41.06.500's statutory authority, provides performance evaluation procedures for agency managers.

¶14 RCW 41.06.176 and former RCW 41.06.500(2)(c) clearly emphasize different criteria in evaluating employees and managers.[4] And former WAC 356-30-300 and former WAC 356-56-440, both entitled "performance evaluation," apply to different classes of agency employees. Furthermore, former RCW 41.06.500(1) provides that the rules for managers "shall be separate from rules adopted for other employees, and to the extent that the rules adopted

---

[2] Except for those managers expressly exempted or excluded from chapter 41.06 RCW's provisions under RCW 41.06.070. That statute neither expressly exempts nor excludes Washington Management Service employees or the Commission's human resources manager. *See* RCW 41.06.070.

[3] Moreover, former RCW 41.06.500(2)(f) mandates that agency directors shall, in establishing rules for managers, provide that managers may only be reduced, dismissed, suspended, or demoted for cause.

[4] RCW 41.06.022 defines a manager as an employee who "[h]as substantial responsibility in personnel administration" or that is "[f]unctionally . . . above the first level of supervision and exercises authority that is not merely routine or clerical in nature and requires the consistent use of independent judgment." *See* RCW 41.06.022(4), (5). As Commission's human resources manager, Skelly had substantial responsibility in personnel administration, exercised authority that was more than clerical in nature, and required consistent use of independent judgment.

As a manager, Skelly was subject to the director of personnel's regulations concerning managers. *See* former ch. 356-56 WAC.

under this section apply only to managers[,] shall take precedence over rules adopted for other employees."

¶15 We read statutes pertaining to the same subject matter together to give each effect and to harmonize them. *US W. Commc'ns, Inc. v. Utils. & Transp. Comm'n*, 134 Wn.2d 74, 118, 949 P.2d 1337 (1997). If we harmonize RCW 41.06.169, RCW 41.06.176, former RCW 41.06.500, former WAC 356-30-300, and former WAC 356-56-440, the term "employee," in performance evaluations, does not apply to managers like Skelly. Accordingly, RCW 41.06.176, which requires the agency to notify employees of deficient performance and allow an opportunity for improvement, does not apply to Skelly.

¶16 Skelly was a permanent Washington Management Service employee when Parsons terminated him. Former WAC 356-56-500 (1994),[5] in effect during Skelly's termination and appeal, provides that appointing authorities like Parsons "may demote, suspend, reduce in salary, or dismiss a permanent Washington management service employee for cause." Former WAC 356-34-010(1)(a)-(i) (1991) lists the following causes for demotion, suspension, reduction in salary, or dismissal: neglect of duty, inefficiency, incompetence, insubordination, indolence, conviction of a crime involving moral turpitude, malfeasance, gross misconduct, or willful violation of the published employing agency or Department of Personnel rules or regulations. Former WAC 356-34-010(2) requires appointing authorities to dismiss managers "whose performance is so inadequate as to warrant dismissal."

¶17 The record before the Board establishes that Parsons had sufficient cause to dismiss Skelly. The Board found that Parsons issued Skelly a letter of reprimand for his inappropriate comments on an employee's Department of Labor and Industries claim form. Parsons cautioned Skelly that similar behavior in the future would result in disciplinary action.

---

[5] The director of personnel adopted former WAC 356-56-500 under chapter 41.06 RCW's and RCW 41.06.500's statutory authority. Former WAC 356-56-015 (1994).

Parsons said that Skelly's response to the letter surprised him because he felt that Skelly failed to understand the inappropriateness of his comments.

¶18 Later, based on complaints from several Commission employees, Parsons and a Commission deputy director hired the Washington State Patrol (WSP) to investigate Skelly's workplace behavior.[6] Parsons said that "there was a series of things going on" and that "[t]here was enough credibility in terms of negative things [that Skelly's coworkers and subordinates said]" to warrant the investigation. AR at 827. Parsons explained the scope of the investigation to Skelly.

¶19 Parsons also informed Skelly that he was not to interfere with the investigation or talk with any potential witness to the matters under investigation. The WSP later discovered that, despite Parsons's order, Skelly had contacted a former Commission employee who was a potential witness in the investigation.

¶20 The WSP interviewed both Skelly and about 25 percent of the Commission's employees. After the investigation, the WSP delivered a report to Parsons detailing its findings. The Commission employees generally spoke negatively about Skelly, describing him as confrontational, argumentative, intimidating, disrespectful, a "button pusher," unapproachable, offensive, juvenile, angry, inattentive, inconsiderate, and belittling. AR at 222. They also said that Skelly was a poor communicator, talked down to women, and occasionally made female employees cry. The interviewees said that Skelly was incompetent, provided inaccurate human resource information, failed to advertise open positions, could not answer human resource-related questions, and had no knowledge of state government human resource processes.

¶21 The investigation revealed that, contrary to policy, Skelly used his Commission cellular phone for personal matters. Parsons also learned that Skelly had inappropriately showed Commission employees a videotape of police

---

[6] Parsons hired the WSP to maintain objectivity in the investigation.

arresting a Commission employee. The WSP report also detailed several verbal confrontations Skelly had with another Commission manager.

¶22 Parsons directed Skelly to attend a predisciplinary conference to discuss the report and present mitigating circumstances. Parsons said that Skelly generally denied most of the allegations, blamed the allegations on a "mob mentality" toward the human resource department, and opined that the entire investigation was unfair and illegal. AR at 744-45. The deputy director noted that Skelly was angry and raised his voice during the conference.

¶23 After considering the investigation report, Skelly's response and conduct during the predisciplinary conference, and Skelly's performance evaluation from the previous year, Parsons decided to terminate Skelly. Accordingly, Parsons wrote Skelly that he had neglected his duty and committed gross misconduct by abusing his authority as human resource manager. Parsons stated that Skelly's conduct had interfered with staff's work and created a negative, hostile, and adversarial work environment for Skelly's subordinates and co-workers. Parsons found that Skelly also willfully violated published Commission and Department of Personnel rules and regulations when he improperly appointed a secretary and misused his agency-provided cellular phone. The letter stated that Skelly behaved insubordinately and neglected his duty when he contacted a potential witness to the WSP investigation despite Parsons's instructions to the contrary. Parsons concluded that Skelly was not a positive role model within the workplace and that he failed to understand that he had acted inappropriately. Finally, Parsons told Skelly that his conduct was egregious enough to warrant dismissal, that the agency has high expectations of all Washington Management Service employees, and that Skelly had not lived up to those expectations.

¶24 The Board record shows that Parsons had justifiable causes for dismissing Skelly. Former WAC 356-34-010; *see Nelson*, 63 Wn. App. at 115 (citing RCW 41.64.130) (appel-

late review is de novo, on the record made at the Board level). Substantial evidence in the record shows that Skelly (1) neglected his duty, (2) fostered inefficiency, (3) was incompetent, (4) was insubordinate, (5) committed malfeasance, (6) committed gross misconduct, and (7) willfully violated published Commission and Department of Personnel rules and/or regulations. *See* former WAC 356-34-010(1)(a)-(d), (g)-(i). And substantial evidence further supports Parsons's decision that Skelly's performance was so inadequate as to warrant dismissal. *See* former WAC 356-34-010(2). Former WAC 356-56-500 and former WAC 356-34-010(2) gave Parsons the authority to dismiss Skelly for cause if Parsons believed Skelly's performance was egregious enough to warrant dismissal. Because Parsons had sufficient cause to terminate Skelly, the Board's denial of Skelly's appeal did not contain, and was not founded on, an error of law. *See* former RCW 41.64.130; *see also Dedman*, 98 Wn. App. at 477 (quoting *Sullivan*, 71 Wn. App. at 321).

¶25 The trial court erred to the extent that it based its ruling—that Skelly's conduct was insufficiently extreme to warrant termination—on RCW 41.06.176. As described above, that statute does not apply to managers' performance. *See* former WAC 356-34-010(1).

2. Arbitrary and Capricious

¶26 Skelly may also appeal a Board decision if the decision is arbitrary and capricious. Former RCW 41.64-.130(1)(e); *Dedman*, 98 Wn. App. at 476. Skelly argues that the Board arbitrarily and capriciously denied his termination appeal when it "completely ignored the 'progressive discipline statute [RCW 41.06.176].' " Br. of Resp't at 10.

¶27 The argument fails because RCW 41.06.176 does not apply to managers' performance. *See* former WAC 356-34-010(1).

¶28 Former WAC 356-34-010(1)-(2) and former WAC 356-56-500 gave Parsons the authority to dismiss Skelly, for cause, if Parsons believed Skelly's conduct was so inad-

equate as to warrant dismissal. Given the statutory authority supporting Parsons's decision, the Board did not arbitrarily and capriciously deny Skelly's appeal.

¶29 Reversed.

QUINN-BRINTNALL and PENOYAR, JJ., concur.

Review denied at 161 Wn.2d 1010 (2007).