163 P.3d 801 (2007)
Barry J. DONAHUE, Appellant,
v.
CENTRAL WASHINGTON UNIVERSITY, Respondent.
No. 24891-7-III.
Court of Appeals of Washington, Division 3.
August 7, 2007.
*803 Judith A. Lonnquist, Law Offices of Judith A. Lonnquist, P.S., Seattle, WA, for Appellant.
James Alan Yockey, Assistant Attorney General, Yakima, WA, for Respondent.
BROWN, J.
¶ 1 Dr. Barry Donahue, a tenured professor at Central Washington University (CWU), contends on appeal that CWU improperly reassigned him from the computer sciences department to teach humanities. Like the faculty grievance officer, the Board of Trustees (Board), and the superior court, we find no breach of the faculty code, arbitrary or capricious action, retaliatory motive, or speech or due process infringement. Accordingly, we affirm.

FACTS
¶ 2 CWU hired Dr. Donahue in 1984 as an assistant professor in the computer sciences department. He received tenure in 1988, and was promoted to professor in 1990. In 1992, Dr. Donahue became department chair. *804 In 1998, he became director of the William O. Douglas Honors College (DHC), a humanities honor program, resulting in split teaching assignments.
¶ 3 CWU's Faculty Code of Personnel Policy and Procedure, a binding agreement between the faculty and CWU partly provides:
Tenure entitles a faculty member to continuous appointment in a specific department of the university or in the university as a whole, and retention of rank without discriminatory reduction of salary and without dismissal except for adequate reason determined according to the requirements of due process as set forth in the Faculty Code.
Ex. 27, section 5.15A (emphasis added).
¶ 4 CWU received complaints from two of Dr. Donahue's colleagues. As a result, CWU issued two no-contact orders. Dr. Donahue filed a partially successful grievance (Donahue I) over the no-contact orders, causing them to be lifted in spring 2000. Later, CWU removed Dr. Donahue as the computer sciences department chair before the end of his term. Dr. Donahue filed a partially successful grievance (Donahue II) over his removal as department chair, resulting in restoration of his reduced pay till the end of the term, but not the position.
¶ 5 Tensions remained in the computer sciences department. Given Dr. Donahue's background with DHC and the humanities, in a June 2000 letter, CWU reassigned Dr. Donahue full time to the College of Arts and Humanities but not to a particular humanities department, and without specifying the time split between DHC and the humanities department. The letter partly stated, "[w]ith this change of assignment, your tenure will be in the university as a whole." Ex. 13.
¶ 6 The letter specified the reassignment was in accordance with sections 6.10 and 6.15 of the Faculty Code. Section 6.10 provides:
Assignment differs from appointment in that a faculty member is appointed to a rank or designation in the university and is subject to change only by promotion. Usually a faculty member is assigned to one department. The faculty member's assignment may vary depending upon preparation and needs of the university.
Ex. 27, section 6.10. Section 6.15A provides, "[f]aculty members may be assigned duties other than those of their original appointment and outside their initial departments or programs." Ex. 27.
¶ 7 Dr. Donahue filed another grievance, now this appeal (Donahue III). He claimed the reassignment violated his speech and academic freedom rights; and that he lost seniority, market value, faculty senate representation, and ability to receive merit from CWU. He requested reinstatement and $1,000,000 in emotional distress damages.
¶ 8 The hearing officer filed findings of fact, conclusions of law, and a recommendation. She concluded CWU did not violate the Faculty Code in reassigning Dr. Donahue and that emotional distress damages were not allowed given the contract nature of the grievance. The Board adopted the findings, conclusions, and recommendation as its final decision. Dr. Donahue unsuccessfully appealed to the superior court. We now consider Dr. Donahue's appeal on administrative review.

ANALYSIS

A. Review of Administrative Decision
¶ 9 The issue is whether Dr. Donahue should be granted relief from the Board's administrative decision. Dr. Donahue contends CWU's actions were arbitrary or capricious, retaliatory, unconstitutional, and violated the Faculty Code.
¶ 10 Our review of the Board's final order is under the Washington Administrative Procedure Act (WAPA). RCW 34.05.570. We stand in the same position as the trial court when reviewing an administrative agency's decision. Farm Supply Distribs., Inc. v. Wash. Utils. & Transp. Comm'n, 83 Wash.2d 446, 448, 518 P.2d 1237 (1974). We review the agency's record without consideration of the superior court's findings of fact and conclusions of law. Waste Mgmt. of Seattle, Inc. v. Utils. & Transp. Comm'n, 123 Wash.2d 621, 633, 869 P.2d 1034 (1994).
*805 ¶ 11 We will uphold a board's factual findings if supported by substantial evidence. Skelly v. Crim. Justice Training Comm'n, 135 Wash.App. 340, 344, 143 P.3d 871 (2006). Substantial evidence exists when the record contains "`a sufficient quantity of evidence to persuade a fair-minded person of the truth or correctness of the order.'" King County v. Cent. Puget Sound Growth Mgmt. Hr'gs Bd., 142 Wash.2d 543, 553, 14 P.3d 133 (2000) (quoting Callecod v. Wash. State Patrol, 84 Wash.App. 663, 673, 929 P.2d 510 (1997)). Because Dr. Donahue does not challenge the agency's findings of fact, they are verities on appeal. Skelly, 135 Wash.App. at 344, 143 P.3d 871.
¶ 12 Where a party challenges a board's application of the law to a particular set of facts, "the factual findings of the agency are entitled to the same level of deference which would be accorded under any other circumstance." Tapper v. Employment Sec. Dep't, 122 Wash.2d 397, 403, 858 P.2d 494 (1993). However, "[t]he process of applying the law to the facts . . . is a question of law and is subject to de novo review." Id.
¶ 13 Additionally, we will grant relief if:
(a) The order, or the statute or rule on which the order is based, is in violation of constitutional provisions on its face or as applied;
(b) The order is outside the statutory authority or jurisdiction of the agency conferred by any provision of law;
(c) The agency has engaged in unlawful procedure or decision-making process, or has failed to follow a prescribed procedure;
(d) The agency has erroneously interpreted or applied the law;
(e) The order is not supported by evidence that is substantial when viewed in light of the whole record before the court, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this chapter;
(f) The agency has not decided all issues requiring resolution by the agency;
(g) A motion for disqualification under RCW 34.05.425 or 34.12.050 was made and was improperly denied or, if no motion was made, facts are shown to support the grant of such a motion that were not known and were not reasonably discoverable by the challenging party at the appropriate time for making such a motion;
(h) The order is inconsistent with a rule of the agency unless the agency explains the inconsistency by stating facts and reasons to demonstrate a rational basis for inconsistency; or
(i) The order is arbitrary or capricious.
RCW 34.05.570(3).
¶ 14 Dr. Donahue requests relief under subsections (a), (c), (h), and (i) of RCW 34.05.570(3). Dr. Donahue fails to establish cause for relief.
¶ 15 1. Arbitrary or Capricious. Dr. Donahue contends the Board's decision was arbitrary or capricious. An order is arbitrary or capricious if it "`is willful and unreasoning and taken without regard to the attending facts or circumstances.'" Wash. Indep. Tel. Ass'n v. Wash. Utils. & Transp. Comm'n, 149 Wash.2d 17, 26, 65 P.3d 319 (2003) (quoting Rios v. Dep't of Labor & Indus., 145 Wash.2d 483, 501, 39 P.3d 961 (2002)). Where room for two opinions exists, and the agency acted honestly and upon due consideration, we should not find an action was arbitrary or capricious, even though we may have reached the opposite conclusion. Buechel v. Dep't of Ecology, 125 Wash.2d 196, 202, 884 P.2d 910 (1994).
¶ 16 Here, Dr. Donahue fails to show the Board's order was arbitrary or capricious. The Faculty Code states: "Tenure entitles a faculty member to continuous appointment in a specific department of the university or in the university as a whole." Ex. 27, section 5.15A (emphasis added). Further, section 6.10 provides, "[u]sually a faculty member is assigned to one department. The faculty member's assignment may vary depending upon preparation and needs of the university." Ex. 27. Further still, section 6.15A states, "[f]aculty members may be assigned duties other than those of their original appointment and outside their initial departments or programs." Ex. 27.
¶ 17 Dr. Donahue's alternative opinion of the differences in the meaning of the terms *806 "appointment" and "assignment" are insufficient to convince us that the Board's order was arbitrary or capricious. Buechel, 125 Wash.2d at 202, 884 P.2d 910. Further, Dr. Donahue showed his willingness to work in other areas of the university by working in the DHC humanities program. Given the faculty code and our facts, it cannot be said the Board's order affirming CWU's reassigning Dr. Donahue was unreasonable or taken without regard to the facts and circumstances.
¶ 18 2. Faculty Code. Dr. Donahue next contends CWU failed to follow its proscribed procedure in section 10.30 of the Faculty Code and the Board's order failed to follow CWU's rules. Section 10.30 sets forth the steps for dismissal. CWU did not dismiss Dr. Donahue; rather, it reassigned him to another department, recognizing his tenure in the university as a whole. The June 2000 reassignment letter states the reassignment was done "to meet the needs of the university" and, because Dr. Donahue's past work "suggested that [his] efforts are best focused on [his] work with the Douglas Honors College and in the area of humanities." Ex. 13. Accordingly, Dr. Donahue's argument that CWU and the Board's order failed to follow CWU's proscribed procedure in section 10.30 of the Faculty Code is unpersuasive.
¶ 19 3. Retaliation. Dr. Donahue contends his reassignment was the result of unlawful retaliation. "To establish a prima facie case for retaliation, a plaintiff must show that (1) he or she engaged in statutorily protected activity, (2) an adverse employment action was taken, and (3) there is a causal link between the employee's activity and the employer's adverse action." Francom v. Costco Wholesale Corp., 98 Wash.App. 845, 861-62, 991 P.2d 1182 (2000). "If the employee makes out a prima facie case, the burden shifts to the employer to show that it acted on a legitimate, nondiscriminatory basis" for its actions. Milligan v. Thompson, 110 Wash.App. 628, 636, 42 P.3d 418 (2002).
¶ 20 Dr. Donahue argues his reassignment was in retaliation for the two earlier grievances. But, on this record no causal link can reasonably be found. Moreover, Dr. Donahue fails to prove that CWU's actions were "adverse." Francom, 98 Wash.App. at 862, 991 P.2d 1182. He did not lose tenure, he was not demoted, and he did not receive a reduction in pay. At most, Dr. Donahue shows an inconvenient alteration of his job responsibilities resulting from a reassignment for CWU's needs, an insufficient basis for actionable retaliation. Tyner v. Dep't of Social & Health Servs., 137 Wash.App. 545, 154 P.3d 920, 929 (2007). Accordingly, Dr. Donahue fails to establish a prima facie case of retaliation.
¶ 21 Dr. Donahue cites Gardner v. Loomis Armored, Inc., 128 Wash.2d 931, 913 P.2d 377 (1996) to support his unlawful action argument. His reliance on Gardner is misplaced because Gardner sets forth the test for analyzing wrongful discharge claims involving alleged violations of public policy. No discharge occurred here and no public policy violation is shown. Moreover, CWU provided justification for its actions university need and Dr. Donahue's past performance with DHC. Because CWU had an overriding justification for its actions, Dr. Donahue could not satisfy the Gardner test, even if a discharge was before us. In sum, Dr. Donahue fails to establish CWU engaged in unlawful procedure or decision-making.
¶ 22 4. Constitutional Claims. Lastly, Dr. Donahue contends the Board's order as applied violates his constitutional due process and free speech rights. He argues his tenure was a property right deprived without due process and that the order violated his First Amendment right to express his concerns and criticisms.
¶ 23 "No person shall be deprived of life, liberty, or property, without due process of law." WASH. CONST. art. I, § 3. Dr. Donahue fails to establish he was deprived of a property right by the Board's order affirming CWU's reassignment. Further, he fails to show he was denied due process. He was properly notified of the reassignment, he filed a grievance, the grievance was reviewed by a hearing officer, the Board, and then the superior court. Due process is satisfied.
*807 ¶ 24 Next, Dr. Donahue attempts to revive his failed retaliation arguments by arguing CWU's actions violated his First Amendment right to free speech. "Whether speech is constitutionally protected is a question of law." Edwards v. Dep't of Transp., 66 Wash.App. 552, 558, 832 P.2d 1332 (1992). The following four-part test determines whether a public employer has violated a public employee's right to free speech:
First, the public employee must establish that his speech dealt with a matter of public concern. Second, if the speech dealt with a matter of public concern, the public employee must prove that his interest in "commenting upon matters of public concern" is greater than the employer's interest in "promoting the efficiency of the public services it performs." Third, the public employee must demonstrate that his speech was a substantial or motivating factor in the adverse employment decision of which he complains. Finally, if the public employee is able to prove these three elements, the burden shifts to the employer to prove that it would have reached the same decision even in the absence of the employee's protected conduct. The first two inquiries are questions of law for the court to resolve. The latter two inquiries, however, are questions of fact ordinarily left to the jury.
Binkley v. City of Tacoma, 114 Wash.2d 373, 382, 787 P.2d 1366 (1990) (internal citations omitted). Dr. Donahue cannot establish the third elementthe public employee must demonstrate that his speech was a substantial or motivating factor in the adverse employment decision (assumed solely for analysis) of which he complains. As discussed previously, the reassignment was based on university need and Dr. Donahue's past performance with DHC. "If the public employee speaks not as a citizen about a matter of public concern but instead as an employee upon a matter of personal interest, the court is generally not the appropriate forum for reviewing the wisdom of a personnel decision taken by the public employer in response to the employee's speech or behavior." White v. State, 131 Wash.2d 1, 12, 929 P.2d 396 (1997) (citing Connick v. Myers, 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)). Dr. Donahue does not support the claim that public complaints caused his reassignment outside of argumentative assertions.

B. Damages and Attorney Fees
¶ 25 Considering our analysis denying relief to Dr. Donahue, discussion regarding the availability of damages "`steps into the prohibited area of advisory opinions.'" Walker v. Munro, 124 Wash.2d 402, 411-12, 879 P.2d 920 (1994) (quoting Diversified Indus. Dev. Corp. v. Ripley, 82 Wash.2d 811, 815, 514 P.2d 137 (1973)). Further, Dr. Donahue requests attorney fees under RCW 4.84.350, which allows attorney fees to a party prevailing in a judicial review of agency action. Dr. Donahue has not prevailed; thus, his request is denied.
¶ 26 Affirmed.
WE CONCUR: SWEENEY, C.J., and SCHULTHEIS, J.