154 P.3d 920 (2007)
Paula King TYNER, Appellant,
v.
The STATE of Washington; DEPARTMENT OF SOCIAL AND HEALTH SERVICES (DSHS); Rainier School; Larry Merxbaurer, in his individual capacity; Jan Blackburn, in her individual capacity; Jody Pilarski, in her individual capacity; and Tina Fleischer, in her individual capacity, Defendants/Cross-Appellants.
No. 33956-1-II.
Court of Appeals of Washington, Division 2.
March 13, 2007.
*922 Paul Alexander Lindenmuth, Ben F. Barcus & Associates PLLC, Tacoma, WA, for Appellant.
Glen Andrew Anderson, Office of the Attorney General, Olympia, WA, for Defendants/Cross-Appellants.
*923 VAN DEREN, J.
¶ 1 Paula King Tyner appeals the trial court's summary judgment order dismissing her action against the Department of Social and Health Services (DSHS) under (1) 42 U.S.C § 1983[1] for violation of her First Amendment right to free speech[2] and (2) RCW 49.60.210 for terminating her employment in retaliation for comments she made about her supervisor.[3] Finding no error, we affirm.

FACTS
¶ 2 In February 2001, Tyner was a Developmental Disability Administrator I (DDA I) at Rainier School (School), a residential habilitation facility for adults with developmental disabilities, in Buckley, Washington. Residents of the School resided in cottages organized into four Program Area Teams (PAT A, B, C, and E) until April 2002, when the State dissolved PAT B due to legislative budget cuts. Each PAT staff includes psychologists, medical providers, habilitation plan administrators, and recreational administrators. The first line supervisor of PAT staff, the DDA I, reports directly to a Developmental Disabilities Administrator II (DDA II). Tyner was a DDA I at PAT B, and Jody Pilarski was Tyner's DDA II supervisor.
¶ 3 On February 15, 2001, Tyner learned of a verbal altercation that day between two PAT B staff membersEd Densmore, a habilitation plan administrator, and Patty Paeper, a psychology assistant. A week later, Tyner informed Pilarski about the altercation and told Pilarski that she would investigate it. On March 1, Tyner held a meeting that included Paeper and Sharon Buss from Human Resources. Densmore did not attend the meeting, although Tyner requested his attendance. During the meeting, Paeper alleged additional incidents in which she felt harassed by Densmore.
¶ 4 After the meeting, Buss conferred with Lester Dickson, the head of Human Resources, and Jan Blackburn, the acting superintendent, and asked Tyner to have Paeper prepare an incident report. During an ensuing conversation between Tyner and Buss, Tyner "requested that [] Pilarski not be assigned to do the investigation because she did not believe [] Pilarski would do a thorough investigation," Clerk's Papers (CP) at 34, because Tyner was dissatisfied with how Pilarski had responded to two complaints that Tyner had made in the past. Dickson disagreed with Tyner and assigned Pilarski to investigate Paeper's allegations against Densmore.
¶ 5 On March 8, Pilarski placed Densmore on alternate assignment pending the conclusion of the investigation. The alternate assignment required Densmore to work in a different part of PAT B, away from Paeper, and to be escorted whenever he left his new work station. Following her investigation, Pilarski concluded that the evidence was insufficient to support Paeper's sexual harassment claim. She determined, however, that Densmore's conduct was unprofessional and *924 required him to attend classes on anger management, handling emotions, and sexual harassment.
¶ 6 During Pilarski's investigation, Densmore alleged that Tyner had created a hostile work environment for PAT B employees. When Pilarski informed Dickson and Blackburn of Densmore's allegations, Blackburn directed that an incident report be prepared regarding those allegations. After Densmore's incident report against Tyner was filed, Blackburn authorized Pilarski to place Tyner on alternate assignment. As a result, Tyner was assigned to DSHS Region 5 headquarters in Tacoma with no loss in pay or benefits. She was also allowed shorter working hours to account for her longer commute and reimbursement for her commute mileage. Pilarski's investigation of Densmore's claim involved interviews with 24 PAT B employees. In these interviews many staff members "confirmed the allegations made by Mr. Densmore, and some of them raised additional complaints about Ms. Tyner's behavior." CP at 728.
¶ 7 During the course of Pilarksi's investigation of Densmore's claims against Tyner, the legislature implemented a budget cut that required the School to close one of the PATs. As a result, DSHS eliminated a number of positions, including one DDA I position. The administrative rules applicable to Reductions in Force (RIF) required DSHS to terminate the least senior person holding the eliminated position. Because Tyner was the least senior DDA I, DSHS terminated her DDA I position in May 2002. DSHS offered Tyner "an option for continued employment" in a different position. CP at 66. Two months later, she began working as a Regional Licenser at DSHS's Office of Foster Care Licensing.
¶ 8 Tyner sued DSHS, requesting damages and injunctive relief. She contended that DSHS and certain named individuals violated her First Amendment rights under 42 U.S.C. § 1983 and retaliated against her in violation of RCW 49.60.210. The trial court granted DSHS's summary judgment motion, dismissing all of Tyner's claims. Tyner appeals.

ANALYSIS
I. STANDARD OF REVIEW
¶ 9 In reviewing a grant of summary judgment, we engage in the same inquiry as the trial court. Wilson v. Steinbach, 98 Wash.2d 434, 437, 656 P.2d 1030 (1982). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c); Marincovich v. Tarabochia, 114 Wash.2d 271, 274, 787 P.2d 562 (1990).
¶ 10 We consider the evidence and the reasonable inferences therefrom "in [the] light most favorable to the nonmoving party." Schaaf v. Highfield, 127 Wash.2d 17, 21, 896 P.2d 665 (1995). "After the moving party submits adequate affidavits, the nonmoving party must set forth specific facts which sufficiently rebut the moving party's contentions and disclose the existence of a genuine issue as to a material fact." Meyer v. University of Washington, 105 Wash.2d 847, 852, 719 P.2d 98 (1986). A nonmoving party, however, "may not rely on speculation, argumentative assertions that unresolved factual issues remain or in having its affidavits considered at face value." Seven Gables Corp. v. MGM/UA Entertainment Co., 106 Wash.2d 1, 13, 721 P.2d 1 (1986). Where reasonable minds could reach but one conclusion from the admissible facts in evidence, summary judgment is appropriate. LaMon v. Butler, 112 Wash.2d 193, 199, 770 P.2d 1027 (1989).
II. FIRST AMENDMENT CLAIM
¶ 11 Tyner contends that DSHS and certain individual employees retaliated by investigating an employee complaint against her and by putting her on alternate assignment because of her comment that Pilarski, her supervisor, should not be allowed to investigate Paeper's sexual harassment allegation. She thereby asserts that she is entitled to relief under 42 U.S.C. § 1983[4] for violating her First Amendment right of free speech.
*925 ¶ 12 "Whether speech is constitutionally protected is a question of law." Edwards v. Dep't of Trans., 66 Wash.App. 552, 558, 832 P.2d 1332 (1992). In Binkley v. City of Tacoma, our Supreme Court set out a four-step analysis for determining if a public employer has violated a public employee's right to free speech:
First, the public employee must establish that his speech dealt with a matter of public concern. Second, if the speech dealt with a matter of public concern, the public employee must prove that his interest in "commenting upon matters of public concern" is greater than the employer's interest in "promoting the efficiency of the public services it performs." Third, the public employee must demonstrate that his speech was a substantial or motivating factor in the adverse employment decision of which he complains. Finally, if the public employee is able to prove these three elements, the burden shifts to the employer to prove that it would have reached the same decision even in the absence of the employee's protected conduct. The first two inquiries are questions of law for the court to resolve. The latter two inquiries, however, are questions of fact ordinarily left to the jury.
114 Wash.2d 373, 382, 787 P.2d 1366 (1990) (internal citations omitted).
¶ 13 We, therefore, review steps one and two of this four-step analysis de novo as a matter of law. Binkley, 114 Wash.2d at 382, 787 P.2d 1366.
A. Step OnePublic Concern
¶ 14 A public employee's right to free speech is not absolute; "the employee's speech must involve a matter of public concern" to have First Amendment protection. White v. State, 131 Wash.2d 1, 10, 929 P.2d 396 (1997). According to Tyner, her comment that Pilarski should not be in charge of the investigation "address[es] a matter of public concern" because it involves a sexual harassment issue. Br. of Appellant at 32.
¶ 15 "The employee has the initial burden of proving that the speech touches on matters of public concern." Wilson v. State, 84 Wash.App. 332, 341, 929 P.2d 448 (1996). We do not need to inquire further if the employee fails to meet that burden. Wilson, 84 Wash.App. at 341, 929 P.2d 448. The trial court, not the jury, determines, as a matter of law, whether the speech at issue involves an issue of public concern. Rankin v. McPherson, 483 U.S. 378, 386 n. 9, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987); Binkley, 114 Wash.2d at 382, 787 P.2d 1366.
¶ 16 In determining whether an employee meets this burden, we examine several factors, including the content, form, and context of the speech in light of the entire record. Connick v. Myers, 461 U.S. 138, 147-48, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). The speaker's intent is also a factor"[w]as the employee acting as an aggrieved employee, attempting to rectify problems in the employee's working environment, or was he or she acting as a concerned citizen bringing a wrong to light"? Edwards, 66 Wash.App. at 560, 832 P.2d 1332.
Further, speech that occurs during the discharge of an employee's duties likely does not touch on matters of public concern. Likewise, speech that offers the speaker's personal opinions or beliefs does not implicate matters of public concern, especially when it occurs in the work setting. Finally, a speaker who is part of management and is thereby obligated to implement its policies but who, instead, criticizes the policies and refuses to support them, might not be able to call upon the First Amendment for protection.
. . . .
Uncontrolled employee debate about the wisdom of internal office decisions could seriously impact productivity and affect the public institution's ability to carry out its mission. *926 Wilson, 84 Wash.App. at 342, 929 P.2d 448 (internal citations omitted). Recently, the United States Supreme Court clarified that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Garcetti v. Ceballos, ___ U.S. ___, 126 S.Ct. 1951, 1960, 164 L.Ed.2d 689 (2006).
¶ 17 Sexual harassment within a workplace could very well constitute a matter of public concern; but, as we stated in Wilson, a comment addressed solely to an internal audience without any intent to bring it to the public's attention does not constitute a matter of public concern. 84 Wash.App. at 345, 929 P.2d 448. In Wilson, we found that "Wilson's speech [was] not clearly connected to the provision of quality patient care," which is a matter of public concern and, therefore, it was not of public concern. Wilson, 84 Wash.App. at 343, 929 P.2d 448.
¶ 18 Here, as in Wilson, Tyner's speech did not touch on matters of public concern because it was an internal communication that occurred in the work setting while Tyner was performing her official duties as a DDA I. Instead, it related to how an employee complaint should be investigated internally and whether Pilarski would adequately investigate the complaint, not to whether sexual harassment had actually occurred.
¶ 19 Furthermore, Tyner's request that Pilarski not investigate Paeper's harassment allegations against Densmore, based on Tyner's opinion that Pilarski did not do a thorough job on Tyner's own complaints, expressed only her personal dissatisfaction. It was a criticism of Pilarski and DSHS's policy requiring that supervisors be in charge of such investigations.
¶ 20 If Tyner's comment were construed as a matter of public concern, any speech even tangentially related to a public issue could satisfy the public concern requirement for First Amendment protection. This would allow even routine criticism of supervisors, internal office decisions, and policies to be categorized as matters of public interest, a scenario we cautioned against in Wilson. See 84 Wash.App. at 342, 929 P.2d 448.
¶ 21 We hold that Tyner's comment is not of public concern and does not trigger the right to relief under 42 U.S.C. § 1983 for First Amendment violations, because the connection between Tyner's request that Pilarski not conduct an investigation of an employee complaint and the issue of sexual harassment at the School is too tenuous.
B. Step TwoPickering Balancing Test
¶ 22 Even if we were to assume that Tyner's comment involved an issue of public interest, the First Amendment protects Tyner's statement only if her right to speak has greater value than DSHS's interest in efficiency. Pickering v. Board of Educ., 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); Binkley, 114 Wash.2d at 384, 787 P.2d 1366. In making this determination, we must "balance the interests of the employee against the interests of the employer and . . . determine, as a matter of law, which of those interests is greater." White, 131 Wash.2d at 14, 929 P.2d 396. If the employee's actions threaten the employer's interest in maintaining an efficient operation and in avoiding disruptions in the workplace, the employee's right to free speech may be outweighed. Binkley, 114 Wash.2d at 387, 787 P.2d 1366.
The extent to which the employer must justify its competing interest is reduced by the magnitude of the employee's speech. Where the employee's speech is only tangentially of public concern, the employer's burden is lighter. The time, manner, place, and context of the employee's speech are also relevant factors in the analysis.
Wilson, 84 Wash.App. at 347, 929 P.2d 448 (internal citations omitted).
¶ 23 DSHS asserts that Tyner's "interest in criticizing her supervisor's investigatory abilities does not outweigh the State's interest in maintaining the appearance of fairness and impartiality in the workplace." Br. of Resp't at 28. "When someone who is paid a salary to contribute to an agency's effective operation begins to do or say things that detract from the agency's effective operation, the government employer *927 must have some power to restrain the employee." White, 131 Wash.2d at 15, 929 P.2d 396. "Actual disruption need not be shown and deference is given to governmental predictions of harm." White, 131 Wash.2d at 15, 929 P.2d 396. As Tyner's comment is only tangentially of public concern, DSHS's burden of showing potential harm is less rigorous.
¶ 24 DSHS argues that "[its] interests in efficiently and effectively managing personnel issues would be frustrated if supervisors were not permitted to investigate and resolve personnel issues." Br. of Resp't at 29. DSHS also asserts that one supervisor's challenge of another supervisor's investigative authority could undermine the outcome of investigations and the employees' faith in the employer's ability to provide due process. Due to the importance of fair and impartial investigations of harassment claims, without further evidence that Pilarski was incapable or unfair in conducting sexual harassment investigations, DSHS's policy allowing Pilarski to investigate the dispute between Paeper and Densmore outweighs Tyner's First Amendment interests.
¶ 25 Furthermore, DSHS had the authority and responsibility to place Tyner on alternate assignment outside the School because the harassment claim against her involved a significant number of the employees under her supervision. We agree with DSHS that leaving a supervisor in place during such an investigation raises reasonable issues relating to disruption of its policies and procedures and erodes faith in the outcome of any such investigation, thus affecting its efficient operation. Consequently, Tyner's First Amendment claim under 42 U.S.C. § 1983 fails the Pickering balancing test under the Binkley four-step analysis balancing test.
C. Qualified Immunity
¶ 26 DSHS contends that its officers are entitled to qualified immunity from Tyner's 42 U.S.C. § 1983 First Amendment claim because "[t]here is no law clearly establishing that criticizing one's supervisor or speaking pursuant to one's official duties constitutes speech on a matter of public concern."[5] Br. of Resp't at 40. "The doctrine of qualified immunity limits the exposure of public officials to liability for damages under 42 U.S.C. § 1983." Benjamin v. Wash. State Bar Ass'n, 138 Wash.2d 506, 527, 980 P.2d 742 (1999). We explained qualified immunity in Wilson:
Public officials are immune from suit unless the "law clearly proscribed the actions" they took. This means that the doctrine is not applicable to defendants if, by their conduct, they violated a clearly established constitutional right of which a reasonable person would have been aware.
The applicability of qualified immunity to a particular individual is a question of law. A plaintiff seeking to rebut a defendant's claim of qualified immunity must demonstrate that the defendant's conduct interfered with a clearly established constitutional right. "Clearly established" means that the contours of the right were so obvious at the time the official acted that a reasonable official would have understood that what he was doing violated that right. Thus, the plaintiff "must do more 'than identify a clearly established legal test and then allege that the defendant has violated it. The plaintiff must demonstrate a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited.'"
84 Wash.App. at 349-50, 929 P.2d 448 (internal citations omitted).
¶ 27 Tyner quotes United States v. Lanier, 520 U.S. 259, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997), at length about "fair warning" and clearly established laws that give reasonable warning that the conduct at issue violates *928 constitutional rights. She argues that "the law provided sufficient 'fair warning' that retaliating against someone who raised a concern with respect to the method and manner in which allegations of sexual harassment are to be investigated is worthy of [F]irst [A]mendment protections." Reply Br. of Appellant at 14. Without her so stating, we assume that she relies on RCW 49.60.210 as the law that gives such "fair warning." Lanier, 520 U.S. at 270, 117 S.Ct. 1219.
¶ 28 Tyner fails to provide any authority supporting her contention that her comment on Pilarski's ability to investigate a harassment claim is a clearly established right that prevents DSHS from investigating a subsequent employee complaint about her management style. Instead, she asserts that the touchstone "for qualified immunity ultimately is whether or not the public officials acted in a `reasonable' manner, give[n] the current state of law," Reply Br. of Appellant at 14, and that "if one objectively examines what occurred in the instant case, [it] is indicative of substantial `irrational' behavior that is clearly, in light of existing precedent, something that neither needs to be condoned nor provided a free pass." Reply Br. of Appellant at 14-15.
¶ 29 Tyner's argument fails to establish that the law is clearly established or that employers have "fair warning" that (1) an employer may not investigate employee complaints about a supervisor if the supervisor had earlier suggested that the employer use a different investigator to assess a different complaint or (2) that a supervisor may not be reassigned to a different location during an investigation of that supervisor. Lanier, 520 U.S. at 270, 117 S.Ct. 1219. Tyner's mere assertion that the timing of her alternate assignment proves that the transfer was made in retaliation for her comment about who should investigate Paeper's complaint about Densmore is speculative at best. White, 131 Wash.2d at 17, 929 P.2d 396 (stating that the plaintiff's inference of retaliation from the timing of a transfer was insufficient).
¶ 30 Even if we were to assume that Tyner's relocation to Region 5 headquarters was related to her comment, it was merely a challenge of DSHS's policies and management decisions that does not merit First Amendment protection under 42 U.S.C. § 1983. Thus, Tyner fails to show that the individual defendants interfered with her clearly established First Amendment rights and they are, therefore, entitled to qualified immunity.
¶ 31 In sum, viewed in a light most favorable to Tyner, the evidence is insufficient to create a genuine issue of material fact. Tyner failed to present sufficient evidence to support a prima facie case that DSHS retaliated against her in violation of her First Amendment right of free speech. Consequently, the trial court properly dismissed her 42 U.S.C § 1983 claim on summary judgment.
III. VIOLATION OF RCW 49.60.210
¶ 32 Tyner also argues that she was subject to an adverse employment action in violation of RCW 49.60.210.[6] To survive DSHS's summary judgment motion, Tyner must prove a prima facie case of retaliation. Johnson v. DSHS, 80 Wash.App. 212, 226, 907 P.2d 1223 (1996). "To establish a prima facie case for retaliation, a plaintiff must show that (1) he or she engaged in statutorily protected activity, (2) an adverse employment action was taken, and (3) there is a causal link between the employee's activity and the employer's adverse action." Francom v. Costco Wholesale Corp., 98 Wash.App. 845, 861-62, 991 P.2d 1182 (2000). "If the employee makes out a prima facie case, the burden shifts to the employer to show a legitimate, nondiscriminatory basis" for its actions. Milligan v. Thompson, 110 Wash. App. 628, 636, 42 P.3d 418 (2002).
A court may grant summary judgment even though the plaintiff establishes a prima *929 facie case and presents some evidence to challenge the defendant's reason for its action. The Supreme Court recently held that when the "record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred," summary judgment is proper.
Milligan, 110 Wash.App. at 637, 42 P.3d 418 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)). This burden shifting scheme also applies to retaliation claims. Milligan, 110 Wash.App. at 638, 42 P.3d 418.
¶ 33 DSHS does not concede that it took any adverse employment action against Tyner. DSHS allowed Dickson to assign the investigation of Paeper's complaint to Pilarski and to temporarily place Tyner on alternate assignment pending the outcome of Pilarski's investigation of Densmore's complaint against Tyner. Tyner's relocation was in accord with DSHS's policy of protecting employees potentially subject to a hostile work environment. Tyner "was not subject to any permanent loss of pay or benefits, was not demoted or fired[,] and did not have her job responsibilities permanently altered"[7] as a result of the investigation or the relocation of her work site. Br. of Resp't at 33.
¶ 34 "An actionable adverse employment action must involve a change in employment conditions that is more than an `inconvenience or alteration of job responsibilities,' such as reducing an employee's workload and pay." Kirby v. City of Tacoma, 124 Wash. App. 454, 465, 98 P.3d 827 (2004) (internal citations omitted). The United States Supreme Court recently noted, "reassignment of job duties is not automatically actionable. Whether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and `should be judged from the perspective of a reasonable person in the plaintiff's position.'" Burlington North. & Santa Fe Ry. Co. v. White, ___ U.S. ___, 126 S.Ct. 2405, 2417, 165 L.Ed.2d 345 (2006) (citations omitted).
¶ 35 Tyner was never subject to any loss in pay or benefits during her alternate assignment. She had shorter working hours and the right to request reimbursement for her commute mileage. Thus, the evidence shows that DSHS's action in placing Tyner at an alternate work site caused her mere inconvenience and we conclude that DSHS's actions did not constitute an adverse employment action.
¶ 36 Even if we were to assume, without deciding, that Tyner can establish a prima facie case of retaliation, her claim fails because DSHS presents a legitimate, nondiscriminatory basis for its actions. DSHS responded to Tyner's claims by showing that (1) it placed Tyner at Region 5 headquarter while investigating a harassment claim against her and (2) later terminated her employment under the RIF rules because she was the least senior person in the DDA I position.
¶ 37 Her assertion that the temporal relationship between her request that Pilarski not investigate Paeper's complaint against Densmore and her relocation to Region 5 headquarters during an investigation of a subsequent complaint against her is insufficient to defeat summary judgment. It does not show that the reason for her transfer was a pretext and thus raise a material issue of fact. Moreover, when the RIF occurred, DSHS offered Tyner "an option for continued employment" in a different position. CP at 66. Consequently, the record conclusively reveals incontrovertible, independent evidence that Tyner did not suffer retaliation for her request that Pilarski not investigate Paeper's complaint against Densmore. The *930 trial court properly granted summary judgment.
¶ 38 We affirm.
We concur: HOUGHTON, C.J., and PENOYAR, J.
NOTES
[1] Tyner alleges that her action under 42 U.S.C. § 1983 arose "for violations of her [F]irst [A]mendment right to speak out on matters of public concern," Br. of Appellant at 17, and that there was a "`conspiracy' among [the named individual employees] to violate [Tyner's] civil rights, actionable under 42 U.S.C. § 1983." Reply Br. of Appellant at 1. We do not address her conspiracy claim because it has not been briefed or argued. RAP 10.3(a)(6); Hollis v. Garwall, Inc., 137 Wash.2d 683, 689 n. 4, 974 P.2d 836 (1999).
[2] "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom or speech, or the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances." U.S. CONST. amend. I.
[3] DSHS cross-appeals the trial court's order denying defendants' motion to strike attachments to affidavit of Paul Lindenmuth. Because DSHS fails to assign error or provide any argument on this issue, we do not address it.

The brief of respondent should conform to section (a) and answer the brief of appellant or petitioner. A statement of the issues and a statement of the case need not be made if respondent is satisfied with the statement in the brief of appellant or petitioner. If a respondent is also seeking review, the brief of respondent must state the assignments of error and the issues pertaining to those assignments of error presented for review by respondent and include argument of those issues.
RAP 10.3(b).
[4] 42 U.S.C. § 1983 provides in relevant portion:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
[5] Tyner names Larry Merxbauer, Blackburn, Pilarski, and Tina Fleischer as defendants in their individual capacities. DSHS argues that Tyner's claims against these individuals, except for Pilarski, should be dismissed because insufficient evidence supports their involvement. Tyner requests that we strike DSHS's argument because it was raised for the first time in DSHS's reply brief for the summary judgment motion. Because the trial court did not rule on this issue and granted summary judgment on a different basis, her argument does not merit further review.
[6] It is an unfair practice for any employer, employment agency, labor union, or other person to discharge, expel, or otherwise discriminate against any person because he or she has opposed any practices forbidden by this chapter, or because he or she has filed a charge, testified, or assisted in any proceeding under this chapter.

RCW 49.60.210(1).
[7] At oral argument, Tyner asserted that she suffered from three adverse employment actionsthe investigation of Densmore's complaint against her, the reassignment to Region 5 headquarters in Tacoma, and the termination of her DDA I position. But Tyner does not support the claim that termination from the DDA I position resulted from violation of her First Amendment right of free speech or from violation of RCW 49.60.210 with citation to authority or the record below. RAP 10.3(a). Thus, we do not consider this claim.