FILED
6/15/2026
Court of Appeals
Division I
State of Washington

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| ALISA JEAN WALTERS, | No. 87534-5-I |
| Respondent, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| BRIAN JEROME WALTERS, | |
| Appellant. | |

BIRK, J. — Brian Walters appeals a domestic violence protection order (DVPO) and order to surrender and prohibit weapons entered to protect his ex-wife, Alisa Walters. Brian[1] argues that the DVPO relied on erroneous findings of fact and that the court's orders violated his constitutional rights. Finding no error and that Brian waived certain issues, we affirm.

I

Alisa and Brian were married for 16 years. They had two children together, a son and a daughter, who were 16 and 14 years old, respectively, when the trial court entered the DVPO. In the summer of 2023, Alisa began working at Core Scientific Inc. At Core, Alisa reported to Aaron McCreery. As part of her job, Alisa traveled regularly. In December 2023, Brian became convinced that Alisa had

---

[1] To avoid confusion, we refer to the parties by their first names. We intend no disrespect.

engaged in an extramarital affair with Aaron McCreery. Brian filed for dissolution in December 2023.

In January 2024, Brian hired a private investigator to observe and photograph Alisa and Aaron McCreery while they were on a business trip to Tennessee in February 2024. The private investigator photographed Alisa and Aaron McCreery at the airport, at a restaurant, and in their hotel. On February 28, 2024, Ashley Olson, counsel representing Brian in divorce proceedings, e-mailed Alisa's counsel,

> Mr. Walters has requested that I send you a settlement offer. As you are likely aware, Ms. Walters has engaged in acts with her boss which may compromise her role and employment with Core if discovered. If this occurs there likely will be an impact to Mr. Walters. Mr. Walters has tried to engage with your client to find a solution to the impropriety she is currently engaged in, and to warn her of the employment risk she is involved in, without success. Your client has every right to live however she desires, but in order to avoid any impact to Mr. Walters we are asking to settle this case and to conclude it with haste when the 90 day period is over.

The e-mail concluded, "We strongly ask to reach a resolution prior to your client traveling to Denver on her next work trip with her boss. Thank you for your consideration. Please do not hesitate to contact me . . . with any questions or concerns." On March 28, 2024, Olson sent another settlement e-mail, saying,

> As noted before, Mr. Walters is anxious to resolve this case since your client has continued her illicit relationship with her manager and has even opted to go on additional unnecessary trips to be with him. There is serious concern that she is criminally misusing company funds to support their affair, and/or using funds that could be contributed to the house repairs, and community needs.

2

On April 7, 2024, Brian and Alisa exchanged text messages, in which Brian insisted that Alisa sign divorce paperwork and Alisa agreed to review the paperwork and send it to her counsel. The text message exchange finished with Alisa messaging, "You scared me and you scare me with these conversations- they don't go well so yes I do run literally away from you." And Brian replied, "Well, that's unfortunate. You got yourself in this situation, not me. Honestly, you should be scared of yourself. Look how destructive and selfish you're being." Brian concluded the exchange, writing, "And I'm offended you say I scare you. Frankly, you scare me… Rebecca." Rebecca McCreery is Aaron McCreery's wife.

The Walters's dissolution was finalized on April 25, 2024.

On June 24, 2024, attorney Thomas Malone, representing Brian, sent a packet of information to Core. In the cover letter, Malone wrote,

> My office represents Brian Walters, the former spouse of Core Scientific employee Alisa Walters. Mr. Walters has information and evidence regarding corporate impropriety within Core Scientific between Ms. Walters and an executive of the company. I have enclosed a letter and evidence provided by Mr. Walters of this relationship. Mr. Walters has serious concerns about the nature of this relationship, including but not limited to the power imbalance between the executive and staff member. Mr. Walters hopes by disclosing this information Core Scientific will take appropriate remedial action.

The "enclosed letter" included details of the supposed affair, Brian's disclosure of supposed confessions by Alisa that "she felt as though the sexual relationship with Mr. McCreery was now potentially part of her job," and it purportedly included pictures taken by Brian's private investigator. Brian's letter stated, "I trust Human Resources, Legal, and the CEO [chief executive officer] will put the safety of their

3

employees first and not allow this high-level institutional misconduct to continue at Core Scientific."

In a subsequent text message exchange, on July 11, 2024, Brian and Alisa disagreed over dates in which each of them would be with their children during the summer. Brian threatened to resolve the issue in court, prompting Alisa to respond with an expletive. Brian then messaged, "Are you sure you want to go down this road with me? My next [text] message will be to Aaron and to Rebecca. And mother and Debi [Kampton]."[2] After several more text messages, Alisa messaged, "Newsflash – we are divorced!! You will never know another detail of my life ever!!!!! You literally have no clue what is going on in my life – literally nothing." Brian replied, "Oh I know what's going on. More than you know. You'll see." After Alisa responded, telling Brian that he did not know, he replied, "Soon enough."

Brian had earlier, on June 25, 2024, sent Rebecca McCreery a Facebook message telling her about the alleged affair. By July, Rebecca McCreery had not seen the message and Brian hired a courier to deliver a letter to her at her home. The 11 page letter included pictures of Alisa with Aaron McCreery and the supposed timeline of their affair. In the letter, Brian described discovering "very explicit photos of Alisa," and he concluded the letter writing, "There's more evidence that I have; and I am willing to share. Please feel free to call me." On

---

[2] Debi Kampton is Alisa's sister.

4

July 20, 2024, Brian delivered another packet of information detailing the alleged affair, this time to Kampton.[3]

Core investigated the matter and terminated Aaron McCreery's and Alisa's employment. Alisa's job was terminated on August 22, 2024.

On August 30, Alisa filed a petition for a DVPO to restrain Brian, to compel immediate weapons surrender, and for protections from harm, contact, stalking, and possession of intimate images. The trial court concluded Alisa had proven by a preponderance of the evidence that Brian had committed acts of domestic violence, specifically unlawful harassment. On December 3, 2024, the court entered a one year DVPO.[4] The court ordered Brian to surrender his firearms. The DVPO restrained Brian from harming, contacting, or stalking Alisa, possessing intimate images of her, and from being within 1,000 feet of her, her vehicle, her home, and her workplace. Brian timely appealed.

II

Brian challenges several findings of fact, arguing that the trial court's "clearly erroneous" findings "materially affected all legal conclusions." We disagree.

A

We review a trial court's decision to grant or deny a request for a protection order for abuse of discretion`. In re the Domestic Violence Prot. Ord. for Timaeus, 34 Wn. App. 2d 670, 678, 574 P.3d 127 (2025). A court abuses its discretion if its

---

[3] The packet of information delivered to Kampton included a letter addressed to "Rebecca McCreery."

[4] The initial DVPO was set to expire on December 3, 2025, but Brian has represented to this court that Alisa filed to renew the protection order.

decision is manifestly unreasonable or based on untenable grounds or reasons. In re Dependency of N.G., 199 Wn.2d 588, 599, 510 P.3d 335 (2022). A decision is manifestly unreasonable if it rests on facts unsupported by the record. Id. We review findings of fact for substantial evidence. Timaeus, 34 Wn. App 2d at 679. Substantial evidence is "evidence sufficient to persuade a fair-minded person of the truth of the matter asserted." In re Marriage of Chandola, 180 Wn.2d 632, 642, 327 P.3d 644 (2014). "We defer to the trier of fact on the persuasiveness of evidence, witness credibility, and conflicting testimony." In re the Vulnerable Adult Pet. Knight, 178 Wn. App. 929, 937, 317 P.3d 1068 (2014). We review conclusions of law de novo. Sunnyside Valley Irrig. Dist. v. Dickie, 149 Wn.2d 873, 880, 73 P.3d 369 (2003).

The court shall issue a protection order if it finds by a preponderance of the evidence that the petitioner has proved that they have been "subjected to domestic violence by the respondent." RCW 7.105.225(1)(a). The definition of "domestic violence" includes among other things "unlawful harassment" of "one intimate partner by another intimate partner." RCW 7.105.010(10)(a). "Intimate partner" is defined to include former spouses or "persons who have a child in common." RCW 7.105.010(21)(b)-(c). "Unlawful harassment" includes a

> knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, harasses, or is detrimental to such person, and that serves no legitimate or lawful purpose. The course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner.

RCW 7.105.010(37)(a). " 'Course of conduct' means a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose. 'Course of conduct' includes any form of communication, contact, or conduct, including the sending of an electronic communication." RCW 7.105.010(7)(a). RCW 7.105.010(7)(b) sets out factors to consider when determining whether "the course of conduct serves any legitimate or lawful purpose," including whether (i) contact was initiated by one or both parties; (ii) the "respondent has been given clear notice that all further contact with the petitioner is unwanted"; (iii) the "respondent's course of conduct appears designed to alarm, annoy, or harass the petitioner," (iv) the "respondent is acting pursuant to any statutory authority" reasonably necessary to protect property interests, enforce the law, or meet specific statutory requirements, or (v) the "respondent's course of conduct has the purpose or effect of unreasonably interfering with the petitioner's privacy." In issuing any type of protection order, except for certain exceptions not applicable here, "the court shall have broad discretion to grant such relief as the court deems proper." RCW 7.105.310(1).

B

Brian challenges finding of fact 4, which states,

> [Brian] claims that he had a legitimate purpose for sending the package to [Alisa's] employer as he was concerned about community liability for the use of company funds. While that may have been a legitimate lawful purpose, that does not explain the other packages of information that were sent to others. In the information provided to the court [Brian] never mentioned liability and instead discussed the impacts on him and the children.

7

Brian argues that the finding is erroneous because he provided information to the court detailing his concerns for community liability, and because he proffered legitimate lawful purposes for the packets of information he sent to Rebecca McCreery and Kampton. Brian is correct that he provided the court with filings mentioning his concern for community liability, and the trial court acknowledged that as a possible legitimate lawful purpose for the packet Brian sent to Core.

As to the packets Brian sent to Rebecca McCreery and Kampton, Brian's proffered explanations were concern for Alisa's mental health, the wellbeing of their children, and that Rebecca McCreery "had the right to know about her husband's illicit affair." In weighing competing evidence, the trial court's finding reflects credibility determinations and the weight it afforded the evidence—that Brian's proffered explanations for sending packets to Rebecca McCreery and Kampton were unconvincing or noncredible. We do not revisit the trial court's findings regarding weight of evidence or credibility. See Knight, 178 Wn. App. at 937. The trial court's finding is to the effect that Brian's sending of at least the packets to Rebecca McCreery and Kampton was unsupported by a credible legitimate or lawful purpose, and the trial court could so find from the evidence presented.

C

Brian challenges finding of fact 5, asserting that "attempt" at coercive control is not sufficient to support entry of a DVPO, and that when the court analyzed text messages between the parties it "failed to understand the context" of the situation

8

between them. Finding of fact 5 states, "The parties[' dissolution] had been finalized months before the packages were sent and text messages demonstrate that [Brian] used the information to shame and many times attempt to coercively control the conduct of [Alisa]." Herein entering the DVPO, the trial court relied on a finding of unlawful harassment, not coercive control. As to Brian's contention that the trial court did not understand the context behind certain communications, Brian again improperly asks us to reweigh evidence and credibility determinations.

D

Brian contends that finding of fact 3 is erroneous, arguing that it "failed to note that the parties were still married when the investigation occurred." Finding of fact 3 reads,

> [Brian] . . . had [Alisa] followed by a private investigator to determine whether she was cheating. After determining that he believed he had proof he sent a packet of information to multiple people including the company she worked for, her sister, and to the wife of the person he believed she was cheating with.

The trial court's decision to issue the DVPO did not turn on whether some of Brian's conduct occurred during or after the parties' marriage. Even so, the court described Brian's motivation in hiring a private investigator as being to determine whether Alisa was "cheating," pointing to the time when the parties were still married as Brian claims the finding needed to specify. Brian further argues that the finding makes it seem as though the private investigator's activities, in February 2024, and Brian's sending the packets of information, in June and July 2024, "occurred back-to-back." There is no reason to believe the trial court misperceived

9

the timing of the events shown in the evidence. Brian had Alisa followed, he believed he had proof that she was having an extramarital affair, and he subsequently disclosed that information to multiple people. The trial court's findings are supported by substantial evidence.

III

For the first time, on appeal, Brian contends that, in the absence of a credible threat finding, the trial court's order to surrender and prohibit weapons is an unconstitutional burden on his Second Amendment right to bear arms. Because RAP 2.5(a) permits us to refuse to review issues not raised at the trial court, and because Brian cannot show that the court's order meets an exception to RAP 2.5(a), we decline to review the issue.

Washington appellate courts may refuse to review claims of error not raised in the trial court. State v. O'Hara, 167 Wn.2d 91, 97-98, 217 P.3d 756 (2009) (citing RAP 2.5(a)). The rule encourages the efficient use of judicial resources and supports the principle that trial counsel "are obligated to seek a remedy to errors as they occur, or shortly thereafter." Id. at 98. However, certain exceptions permit parties to raise an issue for the first time on appeal, including in relevant part a "manifest error affecting a constitutional right." RAP 2.5(a)(3). " 'In normal usage "manifest" means unmistakable, evident or indisputable, as distinct from obscure, hidden or concealed.' " State v. Weaver, 198 Wn.2d 459, 466, 496 P.3d 1183 (2021) (internal quotation marks omitted) (quoting State v. Ackerman, 11 Wn. App. 2d 304, 312-13, 453 P.3d 749 (2019)). To satisfy RAP 2.5(a), the appellant "must

demonstrate (1) the error is manifest, and (2) the error is truly of constitutional dimension." O'Hara, 167 Wn.2d at 98. For an error to be manifest, the appellant must show that it caused actual prejudice. Id. at 99. To demonstrate actual prejudice, the party must show that the asserted error caused practical and identifiable consequences at trial. Id. The "focus of the actual prejudice [analysis] must be on whether the error is so obvious on the record that the error warrants appellate review." Id. at 99-100. "We narrowly construe exceptions to RAP 2.5(a)." State v. Knight, 176 Wn. App. 936, 951, 309 P.3d 776 (2013).

In her petition for protection order, Alisa marked the box "yes" next to the question, "Do you want a temporary order that requires the restrained person to give up all firearms, other dangerous weapons, and concealed pistol licenses, and prohibits the restrained person from getting more?" In her petition, she indicated that "Brian has at least 7 assault rifles and guns. [Her] son . . . (at age 9) told [her] that when Brian gets mad, he is afraid that Brian will shoot him." Alisa also indicated in her petition that Brian was already restrained from having firearms due to a protection order obtained by Aaron McCreery in Snohomish County. Despite Alisa's request that the court order Brian to surrender his firearms, and Brian already being subject to such an order, he did not argue to the trial court that an order to surrender and prohibit firearms would be unconstitutional absent a credible threat finding.

Presuming, without deciding, that the order affects a constitutional right, Brian cannot show that the order was manifest error. The record does not support

11

that the alleged error caused Brian actual prejudice. RCW 9.41.800(2)(b) and (c)(ii) direct courts to order surrender and prohibition of firearms when a party is "subject to a court order issued under chapter 7.105 . . . RCW" that restrains "the party from harassing, stalking, or threatening an intimate partner," and by "its terms, explicitly prohibits the use, attempted use, or threatened use of physical force against the intimate partner, protected person, or child that would reasonably expect to cause bodily injury." The DVPO protecting Alisa concerned intimate partners and restrained Brian from causing harm to or harassing Alisa. The order followed the statutory mandate.

Brian contends that United States v. Rahimi "fundamentally transformed the constitutional analysis required for domestic violence firearm restrictions" by requiring courts to find that restrained persons pose a credible threat to the physical safety of another before ordering disarmament. 602 U.S. 680, 702, 144 S. Ct. 1889, 219 L. Ed. 2d 351 (2024). In Rahimi, the Court considered whether 18 U.S.C. § 922(g)(8), a federal statute prohibiting individuals subjected to domestic violence protection orders from possessing firearms, was consistent with the Second Amendment. Id. at 684-86. 18 U.S.C. § 922(g)(8) "provides two independent bases for liability," and 18 U.S.C. § 922(g)(8)(C)(i) "bars an individual from possessing a firearm if his restraining order includes a finding that he poses 'a credible threat to the physical safety' of a protected person.'" Id. at 693. 18 U.S.C. § 922(g)(8)(C)(ii) "bars an individual from possessing a firearm if his restraining order 'prohibits the use, attempted use, or threatened use of physical

12

force.'" Id. While the Court upheld weapons surrender under (C)(i), the Court declined to analyze (C)(ii). Id. ("Our analysis starts and stops with Section 922(g)(8)(C)(i).") RCW 9.41.800(c)(ii) mirrors 18 U.S.C. § 922(g)(8)(C)(ii). Rahimi does not address the statutory provisions at issue. Brian fails to show any manifest error affecting a constitutional right. We therefore decline to review this issue.

IV

Brian asserts that the DVPO violates his First Amendment right to free speech. We disagree. We review constitutional challenges de novo. State v. TVI, Inc., 1 Wn.3d 118, 128, 524 P.3d 622 (2023).

A

Citing Catlett v. Teel, 15 Wn. App. 2d 689, 692, 477 P.3d 50 (2020), Brian argues that the DVPO was predicated on a finding of "harassment [that] was found based on the content and expression of communications made within" the packets of information Brian sent, and that because the court's finding relied on "the information shared, not the conduct of sending three letters[]," that the DVPO infringed on Brian's protected speech.

Government regulation does not necessarily rise to the level of prior restraint "where it is merely a time, place or manner restriction." State v. Noah, 103 Wn. App. 29, 41, 9 P.3d 858 (2000). To be upheld, time, place, or manner restrictions which are content neutral must be narrowly tailored to serve a compelling government interest. Id. "Protecting citizens from harassment is a compelling state interest." Id. A no-contact order is content neutral, because it

prohibits "profession[s] of love, screams of hate or anything in between." Id. Moreover, "[N]ot every regulation that turns on the content of speech in the loosest sense is content based in the constitutional sense. A regulation may remain content neutral despite touching on content to distinguish between classes or types of speech—such as speech that constitutes solicitation." Project Veritas v. Schmidt, 125 F.4th 929, 950 (9th Cir. 2025), cert. denied sub nom. Project Veritas v. Vasquez, 146 S. Ct. 90, 223 L. Ed. 2d 8 (2025). "[R]egulations that 'confer benefits or impose burdens on speech *without reference to the ideas or views expressed* are in most instances content neutral.' " Id. (quoting Turner Broad. Sys., Inc. v. F.C.C., 512 U.S. 622, 643, 114 S. Ct. 2445, 129 L. Ed. 2d 497 (1994)).

In Catlett, we held that, because individuals have a "right to publish accurate, lawfully obtained public records", a protection order restraining a party from publishing public records is both an unconstitutional content based restriction and prior restraint. 15 Wn. App. 2d at 702, 706-08. In contrast, Brian shared no public records, but instead shared information and pictures that he had generated and which he believed showed Alisa had engaged in an extramarital affair with her manager at Core. He shared this information with Alisa's employer, her manager's wife, and her sister. The DVPO prohibited Brian from harming, contacting, stalking, being near, or possessing intimate images of Alisa.[5] These restrictions

---

[5] Brian argues that his letter to Rebecca McCreery was protected speech because "he was communicating truthful information to an interested party about matters directly affecting her." The trial court was unpersuaded by Brian's professed purpose in sharing information with Rebecca McCreery, instead finding it was part of Brian's campaign to harass Alisa.

14

are content neutral and support the state's compelling interest in protecting individuals from harassment. Similarly to the order in Catlett, the order here did not infringe Brian's First Amendment rights.

B

Next, Brian argues that the information he sent was protected speech because he "reported workplace misconduct to Core," and because Alisa's possible extramarital affair with Aaron McCreery was a "matter of significant public interest—potential sexual harassment in the workplace." While "[s]exual harassment within a workplace could very well constitute a matter of public concern[,] . . . a comment addressed solely to an internal audience without any intent to bring it to the public's attention does not constitute a matter of public concern." Tyner v. State, 137 Wn. App. 545, 558, 154 P.3d 920 (2007) (citation omitted).

We do not suggest that Brian's packets would have been protected speech if Brian had disclosed the information about Alisa and Aaron McCreery to a wider audience. In Tyner, Tyner argued that her complaint—that her supervisor should not be allowed to investigate another employee's sexual harassment allegation—was protected speech because it touched a matter of public concern. Id. at 553, 555-57. We held that "[i]f Tyner's comment were construed as a matter of public concern, any speech even tangentially related to a public issue could satisfy the public concern requirement for First Amendment protection. This would allow even routine criticism of supervisors, internal office decisions, and policies to be

categorized as matters of public interest." Id. at 558-59. Similarly, here, a single discrete case of alleged workplace misconduct not involving public figures is not in and of itself a matter of public concern, even if the type of misconduct is broadly the subject of public interest.

C

Finally, Brian suggests disclosure of Alisa's alleged extramarital affair is in the public's interest because Aaron McCreery is a "public official," a definition he supports by labeling Aaron McCreey as "an executive vice president of a multi-billion dollar corporation." We disagree.

The "law has recognized two species of public figures: a general or general purpose public figure and a limited public figure. The general public figure possesses general fame or notoriety in the community and pervasive involvement in the affairs of society." Carter v. Jones, 36 Wn. App. 2d 118, 171, 581 P.3d 1050 (2025) (citing Gertz v. Robert Welch, Inc., 418 U.S. 323, 324, 94 S. Ct. 2997, 41 L. Ed. 2d 789 (1974)). "The person's fame must be very great; the individual must be a household name on a national scale." Id. "A limited-purpose public figure is a private citizen who voluntarily injects himself or allows others to draw him into a public controversy in order to influence the resolution of issues involved." Id. at 171-72. The term "public official" applies to certain categories government employees. See Rosenblatt v. Baer, 383 U.S. 75, 85, 86 S. Ct. 669, 15 L. Ed. 2d 597 (1966) (The " 'public official' designation applies at the very least to those among the hierarchy of government employees who have, or appear to the public

to have, substantial responsibility for or control over the conduct of governmental affairs.").  Aaron McCreery is clearly not a "public official" or general public figure. Brian points to no evidence that he is a limited purpose public figure.  The details of Aaron McCreery's personal life are not a matter of public interest.

V

Citing RCW 7.105.210, Brian argues that the trial court should have considered "mutual combat" and the "natural tensions" occurring during a marriage dissolution before making a finding of unlawful harassment.  RCW 7.105.210 permits the trial court to realign parties in DVPO proceedings where it finds "that the original petitioner is the abuser or harasser and the original respondent is the victim of domestic violence or unlawful harassment."  Brian cites Town of Castle Rock, Colo. v. Gonzales, arguing that domestic violence situations involving "mutual combat" require different legal treatment.  545 U.S. 748, 780-81, 125 S. Ct. 2796, 162 L. Ed. 2d 658 (2005).  Castle Rock, an opinion about whether someone has a constitutionally protected property interest in having police enforce a restraining order, is irrelevant to the case before us.  545 U.S. at 750-51. Furthermore, Brian's citation is to the dissent, and nowhere does the opinion include the term "mutual combat" or the case quotations attributed to it in Brian's brief of appellant.  Because Brian did not argue RCW 7.105.210 to the trial court, raising it for the first time on appeal, we decline to review the issue.  See RAP 2.5(a).

VI

Alisa requests attorney fees and costs, citing two possible bases, (1) under RAP 18.9(a) for defending against a frivolous appeal, or (2) under RAP 14.2 and RCW 7.105.310(j) as the substantially prevailing party. We do not award Alisa fees and costs under RAP 18.9(a) because Brian's arguments are not entirely frivolous. However, because Brian's arguments are largely meritless, and Alisa is the prevailing party, we award her reasonable attorney fees and costs under RCW 7.105.310(j). See Timaeus, 34 Wn. App. 2d at 685-86 (RCW 7.105.310(j) permits courts to award the prevailing party on appeal costs and reasonable attorney fees for bringing a DVPO action.).

Affirmed.

_____
Birk, J.

WE CONCUR:

_____     _____